The person who actually won't be here to solve formal arguments this afternoon is People v. Steven Cuttrell. Counsel, whenever you're ready, let's see. May it please the Court, I'm Robert Burke with the Office of the State Appellate Defender. I'm here for the defendant, Steven Cuttrell. We're asking this Court to vacate or reverse one of its convictions and remand this case for a new trial on the remaining two. First of all, I might mention, I don't know if this person knows, I don't like to come to the lectern with notes or anything like that, but today I felt like I had to. The first thing I want to say is that the actual evidence in this case, the substantive evidence in this case, is not great. She had a damaged, the little girl had a damaged hymen that may or may not have been the result of being molested. And then she told a number of people, maybe ten people or something like that, about this and they all came in and testified. And then there's impeachment evidence and there's propensity evidence, but the substantive evidence is not great. And it's certainly not overwhelming. The judge on this, Walton Morris, and I know Judge Morris, if there's somebody who had a fine judicial temperament, it's him. But this case, I think if Mother Teresa had been the judge in this case, I think she would have lost her temper. And this quote from the judge, it's from a cold record, dry record, but you can really almost hear the anger in his voice. This is at 846, 847, addressing the prosecutor. This is the last time I'm going to tell you about the extra comments. Do you understand me? Do you understand that you are about to get sanctioned here for your display? Do not make any more comments under your breath. Gestations. What pages? 846 to 847, I believe, Your Honor. Okay. Now, I think on gestations he probably either meant gestures or gesticulations or something like that. But the fact that he was this irritated, I don't blame him for combining those two words. Now, I know there's a lot of issues in this case, and the briefs are very lengthy. I wanted to go through just a few of these issues and point out that the state either comes out and says, okay, now that's an error, or you can read that into the state's brief. On the first issue, the really long issue, on issue A, asking questions of the defendant, the judge, the veracity of the state's witness, in asking the inflammatory questions, the state on pages 8, 11, and 12 of their brief admit that that's error. But they say it's not plain error. Now, on sub-issue 3A or A3, unrelated arrest details, the state of 19 says that was only one brief question, and at 20 the state says the objections were sustained. Well, the objections were sustained. The jury still gets to hear what's been said, whether they can forget it or not. Under A5, alleged threats made by the defendant, the state says that those errors were insubstantial, but it's still when you pile up enough of these errors. In 1D, on page 30 of their brief, the state says, well, no, that was an isolated error, that bolstering the credibility of the state's witnesses. There's these isolated errors that infect the entire trial of your honors. On 1F, failing to produce a witness mentioned in the state's opening, the state says, well, okay, now that error was preserved, but it was not harmless. And because it was preserved, that's what you get in harm's way, not plain error. But that's another point. So many of these errors, the state says, well, now if the defense attorney objected to that and so it should be overlooked, well, if the attorney is going to preserve the issue for appeal so that we get to use the harmless error standard, the attorney has to object at trial and put it in the post-trial motion. And if the attorney doesn't put it in the post-trial motion, like in this case in most of these errors, then it's not preserved, and for no good reason. It's to the prejudice of the defendant. On 1G, eliciting hearsay evidence about a doctor's findings, and by the way, the United States Supreme Court came out with a case this summer on that. The state court wishes to file a supplemental briefs on that issue. I'm sorry, I didn't hear all of what you just said. The United States Supreme Court came out with a case this summer dealing with hearsay testimony to doctors or professionals. I don't need to talk about the case now. If the court wants a brief, I can. Sure. Why don't you file a supplemental? And then, of course, the state would have an opportunity to respond. I'll try to bring that under 80 pages, Your Honor. But as to that, page 43 of the brief, the state says that the ruling actually, the ruling actually impaired the prosecution. But if the ruling impaired the prosecution, they could have filed an interlocutory appeal, and they chose not to. I don't think that in the state's brief that's a time to be arguing that the court erred in ruling against the state on one issue. Now, at page 48 in the brief, they say this hearsay issue is probably not an error. Well, that's a pretty weak argument. Now, on one eye, and then I'm going to cite four of these, and then I'll be done with this section of my argument. On page 53, in referencing Jean Stone, the lady who lives next door, the state says, well, now, there was an objection sustained to that. Still, the jury gets to hear it. Page 54, and this is the number three sub-issue, on James Stone, Sr. That's Jean Stone's husband, the couple that live next door. The state says, well, now, that was waived because it wasn't properly preserved, and it was only a brief comment. Well, there's these brief comments throughout the entire trial from start to finish. Number four, and this is that sub-issue on page 55, happy marks. She was a medical professional. They say that error was waived, and besides that, the objection was sustained. Well, on these objections that were sustained, still, the jury gets to hear it. Why is the prosecutor asking these questions to begin with? On number seven in that sub-issue, on page 57 of their brief, the state says, well, now, that was error, but it was harmless error. It was preserved, and the jury was instructed to disregard. A lot of times, by then, it's too late. Your Honor, on issue number two, reasonable doubt, the child was asked what happened. She said he hurt her by sticking his finger in her private area. The state tried to say, okay, now, where in the house was this? She says, my sister's bedroom. And the prosecutor says, well, now, did Steven touch you in your sister's room? She says, uh-uh. Okay, did he touch you in any other place in the house? Just my mommy's room. Okay, and how did he touch you in your mommy's room? He sticks his finger all the way into my hole. Now, the state admits in their brief that her testimony is not crystal clear. That's page 64 of the state's brief. She never specifies exactly when anything happened or what happened, and there's just precious little evidence of how many things happened. She says, he touched me. She told one of the witnesses, he touched me here, and she pointed to her crotch area, and then she pointed behind her, and take that as you will, but that's still only two instances of abuse. We've asked the court to vacate one of the ones about touching her vagina. I believe that because all the cases are the same seriousness, the court properly, for this issue, entered judgment on the first verdict of guilt in count one, I think, and then they should have stopped there, so it would be count two of the second count, the vaginal touching that we think should be reversed. Are there any questions, Your Honor? No, I don't believe so. Thank you, Your Honor. Thank you, counsel. Counsel? May I have this court? Counsel? My name is Sharon Shanahan, and I represent the people of the state of Illinois. This case has a record of over 1,600 pages. Both defendant and state have filed briefs in excess of page limits, 79 pages and 67 pages respectively, and when you count up all of the issues, sub-issues and sub-sub-issues, the defendant raises 22 allegations of error. It's an extremely fact-intensive case, and there's not a lot I can do with that in 10 minutes. So with this court's permission, what I'd like to do is touch on a few of the overarching points in this case and then focus upon some things in the reply brief that I haven't had an opportunity to respond to. The first point I'd like to make is that issue one is framed as allegations of prosecutorial misconduct and, in some cases, ineffective assistance of counsel. That's it. And yet, there are several of the claims of error in which defense counsel objected, the trial court said objection overruled and allowed the prosecutor to proceed. That's not prosecutorial misconduct because the trial judge said she could proceed. It's also not ineffective assistance of counsel because defense counsel did all he could do to stop it. So it's neither one of the claims that the defendant has raised in his brief. For example, there's a claim in the comments about defendant's employment. When the prosecutor asked Witness McVeigh when the defendant was last employed, defense counsel objected. Trial court overruled. Implied hearsay evidence of domestic violence, the prosecutor asked if she could present defendant's convictions for beating his prior wife. The trial court said you can ask him about if he ever hit or hurt Janet, and if he says no, then it's no. That's what she did. That's not prosecutorial misconduct. That's not ineffective assistance of counsel. Dr. Swofford's testimony, use of the term risk assessment, those are all things in which the defense counsel objected, the trial courts overruled the objection and allowed the prosecutor to proceed. So the reason why this is important is that, one, it's not the issue that the defendant alleges, and two, it changes the standard of review, not for the whole brief. Certainly there are claims that definitely fall under auspices of prosecutorial misconduct and ineffective assistance of counsel, but these examples that I've given you don't belong in this brief. So I think that's an important thing to note. The next thing I'd like to point out, there is no question, as Mr. Burke read through the comment from the trial court, this was a passionate case with passionate people engaged in a passionate dispute about one of the most heinous crimes I think we would all agree that can be committed, which is sexual abuse of a very young child. As this court knows, I began my brief with a lengthy quote from Justice Rarick, which I don't intend to reiterate to you now, but I would just like to touch on it. He noted that the United States Supreme Court has proclaimed the prevention of sexual exploitation and abuse of children a government objective of surpassing importance. He notes that Illinois has exhibited an acute interest in the well-being of minors and that the welfare and protection of minors has always been considered one of the state's most fundamental interests. He notes that it is the prosecutor's job, in the character of a parent, to represent these children who, by reason of infancy, depictive understanding or misfortune or infirmity, are unable to take care of themselves and that the performance of this duty is justly regarded as one of the most important of governmental functions and this prosecutor definitely approached this case with that in mind. Yes, she was passionate and she wanted to obtain justice for this little six-year-old girl. I would argue that her passion did not exceed the bounds of propriety, that it did not deny the defendant a fair trial, and I think that this court should affirm. The next point I would like to point out is that of the 22 issues, there are one, maybe two, that are preserved. So we all know that an objection and inclusion in a post-trial motion are required to preserve an error for review. In People v. Jackson, the court says, to avoid the two-fold requirement that errors be objected to and included in the post-trial motion would allow appellate counsel to comb the record for every semblance of error and raise issues on appeal whether or not trial counsel considered them of any importance. That's exactly what happened here. That's why the preservation is required below. And I think that's extremely important here. So what we're looking at here is review almost in its entirety under the Plain Error Doctrine. Contrary to what Mr. Buerkle, in his argument, I believe that the evidence of guilt is absolutely overwhelming. Six-year-old Brooklyn was, for a six-year-old, a marvel of clarity and composure. She testified that the defendant stick his finger in me there, in my private area. He'd do that to hurt me. He sticked his finger all the way into my little hole, and it hurt. As the defendant's release from prison became a reality to her, Brooklyn became very fearful and began to confide in some of the adults that she knew and trusted. Her aunt, Sharon Toledis, her regular babysitters, Pastor James Stone and his wife, Mrs. Stone, her neighbor, Vanessa Landingham, and Charity Doyle, Mrs. Doyle's daughter, Shawna Lyles, and 84-year-old Sarah Tanner, who lived just down the road. She said things like the defendant put his finger in her and pointed to her vagina area, that he hurt her, pointing to her pubic area. She said the defendant penetrated her to her bone, that the bathroom was a bad place because the defendant took her there. And then she pointed to what her aunt described as her little hoo-hoo and said that he would play with her. So between what Brooklyn testified to at trial and the corroborating evidence of the numerous people she told about, there is overwhelming evidence just right there. I would note that the Supreme Court's decision in People v. Bowen points out that a child's initial complaint of sexual abuse has been characterized as often striking in its clarity and re-improvement. We also have Brooklyn's told DCFS worker Donna Hesterly, the defendant hurt her private parts, stuck his finger in her private part. She said the same thing to her therapist, Karen Henderson. Dr. Kathy Swofford, the expert that testified in this case, found physical evidence of sexual abuse to be fairly conclusive. She noted notching on the bottom of the hymen, symptoms including itching, burning on urination, and redness as concerning symptoms, and her examination of Brooklyn's behavior was indicative of abuse. Finally, the defendant's own daughter testified that from the time she was 5 until she was 12, the defendant had regularly touched her vagina and made her touch his sexual organ. So I think there's definitely overwhelming evidence of sexual abuse, and I don't think I really have time to go into any of the particular things. As I said, it's a very fact-specific issue. There was a lot of passion in this case. There was a lot of things going on here. There were things that were not said as well as they could have been said. I don't doubt that. Definitely the prosecutor was at times sarcastic, argumentative, but there was not reversible error here. There was not plain error here. And for those reasons, we would ask the court. Are there any questions? I don't believe so. Thank you, counsel. Your Honor, unless the court has questions, I will wait. I wasn't clear what count you think we should reverse. Your Honor, can you tell me? You said there's insufficient evidence as to one of the three. There's no reliable indicia that all three of the number of acts alleged actually occurred, and I assume you referred to a specific count. Well, Your Honor, of the three, I think two of them were her vagina. Right. And I think that in that section of the brief, we asked that one of the ones has to have a vagina. Okay, okay. I got it then. Okay, I missed. I couldn't tell by looking at it again. Thank you, Your Honor. Okay, thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. Case under advisement.